Joseph A. TOTH, Petitioner,

v.

WORKERS' COMPENSATION AP-PEAL BOARD (USX CORPORATION and Thomson), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 30, 1999.

Decided Sept. 2, 1999.

Daniel K. Bricmont, Pittsburgh, for petitioner.

Marie Jurbala Shiring, Pittsburgh, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Joseph A. Toth (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that af-firmed the decision of a workers' compensation judge (WCJ) denying Claimant's claim petition for benefits for a bilateral hearing loss. We affirm.

Claimant worked for USX Corporation (Employer) for forty years until his last day of work on August 27, 1993. On September 13, 1995, Claimant filed a claim petition, alleging that he had suffered bilateral hearing loss as a result of long and continuous exposure to excessive noise at work. Employer denied the allegations, specifically, raising a statute of limitations defense and a lack of exposure to hazardous occupational noise. The case was assigned to a WCJ.

Claimant testified on his own behalf, describing his exposure to noise as an anti-aircraft crewman while in the army and his work for Employer beginning in 1953 when he left the service. Claimant further testified about his job as a conductor, a position he held during the final six years that he worked for Employer. Claimant described the conductor job as one in which the employee would run a train engine by remote control, while standing in front of the engine. Claimant testified that the noise was continuous, and indicated that "[y]ou got that big loud bam in front of the engine." (Reproduced Record, p. 14a). Claimant indicated that he worked all shifts and that he thought the evening and night shifts were noisier than the day shift. Claimant also acknowledged that he had had hearing problems for quite some time and had first begun wearing hearing aids around 1970 (medical records introduced into evidence show that Claimant began wearing hearing aids in 1960).[1]

Employer presented the testimony of James F. Quealy, Employer's industrial hygienist. Mr. Quealy, who is certified by the American Board of Industrial Hygiene, has worked for Employer since 1972. Mr.

---

1. The parties submitted the deposition testimony of three physicians, all of whom opined that Claimant had a profound, bilateral hearing loss. Both parties also submitted reports authored by Joseph Sataloff, M.D., a noted otologist. Because the testimony and reports of these physicians have no impact on the issues raised in this case, a discussion of their respective opinions is omitted from this opinion.

Quealy testified that testing the noise level for a job was accomplished by having an employee wear a dosimeter, a small electronic devise that registered noise intensity over a period of time, giving a single number readout. Mr. Quealy testified that the noise level for the job of conductor was measured during the day shift in 1991 and again in 1996 and that Claimant here was the employee who wore the dosimeter for the testing that was performed in 1991 for the conductor's job.

Mr. Quealy further testified that he supervises and controls the noise surveys, although an assistant/assistants (non-USX employees) perform the technical work. He explained the procedure he used in supervising and overseeing the recording of the noise monitoring in order to ensure that the level of noise measured was representative of the level of exposure during normal working conditions. Mr. Quealy also testified that the test results in 1991 revealed that the time weighted average noise exposure for the conductor's job was 80 decibels, and that this noise level reflected Claimant's exposure at the time of the test and for subsequent periods of time.[2]

The WCJ found Claimant generally credible; however, he noted that Claimant did not offer any evidence that his work conditions changed in any way following the 1991 survey. The WCJ accepted as credible Mr. Quealy's testimony, finding that the authenticated records of the surveys, prepared and supervised by Mr. Quealy, supported his testimony. The WCJ overruled Claimant's objections to these exhibits, based on the conclusion that the documents fall within an exception to the hearsay rules.[3] Therefore, the WCJ concluded that Claimant in his job as a conductor had not been exposed to hazardous occupational noise as defined in Act 1 of 1995, Act of February 22, 1995, P.L. 1, the hearing loss amendments to the Workers' Compensation Act (Act).[4] This definition states:

> The term "hazardous occupational noise" as used in this act, means noise levels exceeding permissible noise exposures as defined in Table G–16 of OSHA Occupational Noise Exposure Standards, 29 CFR 1910.95 (relating to occupational noise exposure)(July 1, 1994).

Section 105.4 of the Act, 77 P.S. § 25.4.[5]

More specifically, the WCJ found that because Claimant filed his petition on September 13, 1995, Claimant had to have been exposed to hazardous occupational noise between September 13, 1992 and August 27, 1993, the date of Claimant's retirement.[6] Relying on Mr. Quealy's testimony, the WCJ concluded that Employer met its burden of proof that Claimant had not been exposed to hazardous occupational noise during that period of time.[7] Thus,

---

2. The 1996 testing set noise exposure levels for the conductor's job at 82 decibels.

3. *See* the Uniform Business Records as Evidence Act (Business Records Act), 42 Pa.C.S. § 6108.

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

5. Section 105.4 of the Act, by incorporating OSHA's *occupational noise exposure standards,* allows exposure up to 90 decibels for an eight hour day before the exposure is deemed hazardous.

6. The statute of limitations requirement is set out in Section 306(c)(8)(viii) of the Act, 77 P.S. § 513(8)(viii), which states:

> Whenever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensation, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupation noise in the employ of the employer against whom benefits are sought.

7. Section 306(c)(8)(x) of the Act, 77 P.S. § 513(8)(x), states:

> Whether the employe has been exposed to hazardous occupational noise or has long-term exposure to such noise shall be affirmative defenses to a claim for occupational hearing loss and not a part of the claimant's burden of proof in a claim.

the WCJ held that Claimant's claim was untimely. Claimant appealed to the Board, which affirmed.

On appeal to this Court,[8] Claimant argues that the WCJ erred in concluding that Employer had satisfied its burden of proof that Claimant had not been exposed to hazardous occupational noise. Specifically, Claimant contends that Employer's audiograms and noise study evidence did not conform to OSHA standards and were not competent evidence to support the WCJ's finding that Claimant had not been exposed to hazardous occupational noise. Claimant alleges that the WCJ's conclusions rested on the contents of tests performed by non-employees and that Mr. Quealy had no personal knowledge about how the tests were performed or who performed them.

This argument is an attack on the documentation representing the noise testing performed at the location in Employer's plant where Claimant worked as a conductor. This is essentially an argument grounded on hearsay, based upon a contention that the documents were not properly authenticated as business records pursuant to the Business Records Act, which states in pertinent part that:

(b) **General Rule.**—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b).

■ Whether a document should be admitted under the business records ex-

ception to the hearsay rule is within the discretion of the trier of fact provided that his or her discretion is exercised within the dictates of Section 6108. *Duquesne Light Co. v. Woodland Hills School District,* 700 A.2d 1038 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998). This type of evidentiary ruling may only be reversed on appeal if an error of law was committed or there was a clear abuse of discretion. *Id.* A document not prepared by the person testifying is not automatically rendered inadmissible, as long as the "authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of reliability." *Id.* at 1049. However, a record in the nature of an expert opinion, diagnosis or conclusion is generally not admissible as a business record unless the expert who rendered the opinion is available for cross-examination. *Id.* (citing *Ganster v. Western Pennsylvania Water Co.,* 349 Pa.Super. 561, 504 A.2d 186 (1985)).

■ Claimant relies on the *Ganster* case for the proposition that no lack of trustworthiness may appear in the source of information or the method or circumstances of preparation of the record. He makes this argument based upon the fact that non-USX employees performed the actual noise level testing in the plant. However, Claimant fails to recognize that the person authenticating the records need not have personal knowledge of the acts recorded in order to testify to the authenticity of the records. *Id.* "It is the business purpose of the record, rather than the employee status of the source, which renders such hearsay evidence specially reliable." *Commonwealth v. Nieves,* 399 Pa.Super. 277, 582 A.2d 341, 345 (1990), *petition for allowance of appeal denied,*

---

**8.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 the Administrative Agency Law, 2 Pa.C.S. § 704. *General Electric Co. v. Workers' Compensation Appeal Board (Bower),* 734 A.2d 492 (Pa. Cmwlth.1999).

529 Pa. 633, 600 A.2d 952 (1991) (results of testing performed by an independent laboratory rather than employee were admissible).

Mr. Quealy's testimony, found credible by the WCJ, provided information about the outside technicians, who were assigned to his department full-time. He explained that, although he could not do all monitoring himself and also administer the program, he directed the monitoring and was the person responsible for the records kept of the monitoring. This testimony provided sufficient indicia of the reliability of the records of the monitoring of noise levels in Employer's plant. Thus, we conclude that the WCJ did not abuse his discretion in admitting these records under the business records exception and relying on them to support the finding that during the period between September 13, 1992 and August 27, 1993, Claimant was not exposed to hazardous occupational noise as defined by the Act.

Claimant also argues that the WCJ credited Claimant's rebuttal testimony, but ignored it when concluding that Employer had proven that Claimant was not exposed to hazardous occupational noise. Specifically, Claimant refers to his own testimony that he worked all three shifts on a rotating basis, not just the daylight shift, which was the only shift monitored for noise levels, and his belief that the other shifts exposed him to higher levels of noise. The WCJ's finding that is the basis for this allegation of error states:

> 18. In finding that claimant did not have exposure to hazardous occupational noise within three years of the date of the filing of the petition, ... this adjudicator notes that claimant, while generally credible, did not testify in substance with regard to what the nature of his heavy noise exposure was as a train conductor. In this regard, he was very articulate with regard to his heavy noise exposures working in the foundry; at the open hearth; and in the labor gang in the Transportation Department.

> However, with regard to loud noise working as the conductor of a remote-controlled train engine, he only identified a "big loud bam" in front of an engine. He thought this was a continuous noise but, "That's about it."

> Importantly, as indicated above, despite Mr. Quealy's testimony that there was not hazardous occupational noise, the claimant did not seek to testify in greater detail with regard to the particulars of the noise exposure.

(WCJ's decision, p. 14).

This recitation shows that the WCJ did in fact consider Claimant's testimony, but found it insufficient to rebut Mr. Quealy's testimony. As often repeated by this Court, the WCJ is the sole judge of credibility and may accept or reject the testimony of any witness in whole or in part. *Stevens v. Workers' Compensation Appeal Board (Consolidated Coal Co.)*, 720 A.2d 1083 (Pa.Cmwlth.1998), *petition for allowance of appeal granted,* —— Pa. ——, 739 A.2d 546 (1999). Nor can we disturb the WCJ's findings, even if there is evidence to the contrary, if those findings are supported by substantial evidence. *Id.* Our review of the record reveals that substantial evidence supports the WCJ's findings.

Accordingly, we conclude that the WCJ did not err in determining that Claimant failed to file his claim petition within three years of his exposure to hazardous occupational noise as required by Section 306(c)(8)(viii) of the Act. We, therefore, affirm the Board's order that affirmed the WCJ's denial of Claimant's claim petition for benefits for bilateral hearing loss.

### ORDER

NOW, September 2, 1999, the order of the Workers' Compensation Appeal Board, at No. A97–3061, dated December 16, 1998, is affirmed.