J-S50005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| GREGORY B. BARTUCCI | |
| Appellant | No. 1686 MDA 2015 |

Appeal from the Judgment of Sentence July 8, 2015
in the Court of Common Pleas of Lancaster County Criminal Division
at No(s): CP-36-CR-0001286-2014

BEFORE: MUNDY, STABILE, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J. **FILED SEPTEMBER 15, 2017**

Appellant, Gregory B. Bartucci, appeals *pro se* from the judgment of sentence entered in the Court of Common Pleas of Lancaster County, following his conviction by a jury of theft by unlawful taking,[1] theft by deception,[2] and forgery.[3] Appellant challenges (1) the denial of his right to self-representation; (2) his appearance before the jury in prison clothes; (3) the denial of his right to a speedy trial; (4) the preclusion of Hollinger Inc.'s insurance loss claim; and (5) the alleged denial of credit for time spent in New Jersey custody. We affirm.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3921(a).

[2] 18 Pa.C.S. § 3922(a)(1).

[3] 18 Pa.C.S. § 4101(a)(2).

We adopt the facts and procedural history set forth by the trial court's opinion. *See* Trial Ct. Op., 6/22/17, at 1-4. This appeal followed.

Appellant raises the following issues for our review:[4]

> I. Was the core of the defendant's "Faretta" right to self-representation egregiously violated under the Federal Sixth Amendment guarantee which subsequently created the existence of a structural error requiring the automatic reversal of his conviction?
>
> II. Was the integrity of the defendant's trial structure under the Federal Fifth, Sixth, and Fourteenth Amendment guarantee's rendered so fundamentally unfair and undermined, when he was forced to appear before the venire and petit jury panel's wearing prison clothes and appeared dishevelled, creating the existence of plain error requiring the reversal of his conviction?
>
> III. Was the defendant's speedy trial rights as guaranteed by the Sixth Amendment of the U.S. Constitution and its implementation under the Commonwealth's Rule 600 limits violated, requiring dismissal of the criminal information with prejudice?
>
> IV. Was the trial court's preclusion of Hollinger Inc.'s insurance loss claim as inadmissible hearsay a violation of defendant's constitutional rights to due process, fundamental fairness and compulsory process under the Sixth Amendment and Fourteenth Amendment's of the U.S. Constitution?
>
> V. Did the trial court abuse its discretion when it denied defendant credit for time spent in New Jersey custody pursuant to Pennsylvania's fugitive warrant?

Appellant's Brief at 5.[5]

---

[4] We reproduce Appellant's issues as stated.

First "[A]ppellant contends that the trial court failed to comply with the dictates of *Faretta v. California*, 422 U.S. 806 (1975), and that this automatically violated his right of self-representation since the right to appear pro se exists to affirm the accused's individual dignity and autonomy." *Id.* at 9. Appellant, who was permitted to represent himself at trial, claims "[t]he trial court disregarded [A]ppellant's dignity and autonomy, under the 'core' *Faretta* right when it excluded his [sic] from directly participating in the *voire* [sic] *dire* sidebar conferences." *Id.* at 12. Appellant concludes that his "conviction must be reversed in it's [sic] entirety." *Id.* at 9.

It is well-established that

> Potentially disruptive defendants, like all defendants, have the right to represent themselves if counsel is validly waived. Whenever a defendant seeks to represent himself, and particularly when he may be disruptive, standby counsel should be appointed. The court should explain to the defendant the standards of conduct he will be expected to observe. If the defendant misbehaves, he should be warned that he will be removed from the court . . . .

---

[5] We note that Appellant raised two additional issues in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal. ***See*** Pa.R.A.P. 2119(a) (stating that our Appellate Rules mandate that an appellant must develop an argument with citation to and analysis of relevant legal authority). ***See also Commonwealth v. Nelson***, 567 A.2d 673, 676 (Pa. Super. 1989) (stating that we must deem an issue abandoned, and therefore waived, where it has been identified on appeal but not properly developed in the appellant's brief). We find these issues abandoned and therefore waived. ***See id.***

***Commonwealth v. Africa***, 353 A.2d 855, 864 (Pa. 1976).

After a thorough review of the record, Appellant's brief, and the well-reasoned opinion of the Honorable Howard F. Knisley,[6] we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the first question presented. ***See*** Trial Court Op. at 6-10 (holding Appellant's conduct prior to trial required the court to take precautions and not permit Appellant to approach the bench for sidebar conferences in close proximity to four prospective jurors).

Second, Appellant avers that "[i]t is axiomatic, the fair trial right encompassed under the Federal Sixth Amendment, precludes the Commonwealth from requiring that a defendant appear at trial in distinctive prison garb, or appearing disheveled [sic]." ***Id.*** at 19.

Prior to trial, the following exchange took place between the court and Appellant:

> The Court: [to Appellant], I sent [Public Defender, Daniel M. Straszynski] out to see you two weeks ago to tell you to have your clothing ready to proceed to trial today. I notice you're still in your prison garb. Why is that and are you going to change or are you going to trial in a prison outfit?
>
> Sit. You don't stand.
>
> [Appellant]: Sorry. Sorry. I didn't know the rules and regulations.

---

[6] We note that the Commonwealth's brief incorporated the trial court's opinion as its own.

The Court: You better know them because that's what you're here for.

[Appellant]: We're going to start that? You're gonna shout? I can shout, too.

The Court: Guess what?

[Appellant]: How's that?

The Court: You shout; you'll be out of the courtroom.

[Appellant]: You wanna shout? You wanna disrespect me?

The Court: [to Appellant], answer my question.

[Appellant]: You're—you're not supposed to even be proceeding here, sir. You have a motion for recusal. You're not supposed to even be presiding over these proceedings, sir.

The Court: Oh, that's how we're going to be. Are you going to be dressed for trial or not?

I haven't ruled on anything yet.

[Appellant]: No. I don't run the goddamned jail. I filled out three slips to have my stuff approved.

The Court: Calm your voice down or—

[Appellant]: Those hillbilly rednecks down there don't give a shit about me complying with the law in your courtroom, Your Honor.

The Court: I asked—

[Appellant]: Now, do you hear that?

The Court: I didn't hear a thing you said except what's responsive to my question. Are you going to go to trial in that outfit, or would you like Mr. Straszynski to provide

you with some clothing before the jury's brought into the courtroom?

\*   \*   \*

Let me just say for the record, the defendant continues to scream in the courtroom and be unresponsive to the judge's question.

[Appellant]: You're not no judge; you're a clown.  That's what you are.

The Court: [to Appellant], do you wish to have clothing provided by Mr. Straszynski?  That's what—

[Appellant]: I'm not proceeding in these proceedings, Your Honor, because I have none of my materials, which have been taken away from me, none of my materials.

The Court: You were told trial is today.

[Appellant]: Yeah.  Well, guess what?  You go down there and call them redneck hillbillies down there and ask them why they take my materials and why I'm being denied access to the—to the law library.  And they know that I wrote request after request; I have a trial on this date, Your Honor.

The Court: You have been to the law library 125 separate occasions, more than anyone else in the history of Lancaster County Prison.  You have had 22 prior appearances before Courts, predominantly in New Jersey, but also in the state of Louisiana, all of which indicate you have had opportunities to appear and understand what's happening in this court.  This is the day for trial.

[Appellant]:  Um-hum.

The Court: The answer to—my question is, do you wish to have clothing provided, or do you want to go to trial in your prison outfit?

[Appellant]: No.   I'm objecting. I'm objecting to the proceedings . . . .

* * *

The Court: [to Appellant] will be—

[Appellant]: Now—

The Court: —removed from the jury room—or the courtroom. The jurors will be brought here promptly at 1:30. Clothing will be prepared for him and given to him. If he chooses to wear them, fine. If he doesn't, then it's his prejudice that he's providing to the jurors, not the Court's, because the court has properly provided clothing for him to change into.

N.T., 4/13/15, at 5-11.

Following our review of the record, we find no merit to Appellant's claim and adopt the reasoning of the trial court. **See** Trial Ct. Op. at 10-13 (holding Appellant rejected the civilian clothes being offered to him, therefore, he "failed to show that any prejudice caused by his appearance was in any way the result of the actions, requirements or policy of this [c]ourt"). **Id.** at 13.

Third, Appellant argues, regarding his application for dismissal under Rule 600, that

the cursory findings of the trial court cannot be considered binding where the decision was not supported by adequate, substantial and credible evidence and was in complete error.

* * *

The trial courts supercilious efforts to ensure the denial of [A]ppellant's Rule 600 motion was judgment exercised in a manifestly unreasonable manner, a misapplication of the law and was the result of partiality, prejudice, bias or

- 7 -

> ill-will as affirmatively shown by evidence appearing from the record. For these reasons, [A]ppellant's conviction must be vacate [sic] and reversed in its entirety, a writ of habeas corpus issued releasing him from confinement on nominal bail terms or dismiss the criminal information in its entirety with prejudice.

*Id.* at 35, 37 (citation omitted).

Our standard and scope of review in analyzing a Rule 600[7] claim is as follows:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa. Super. 2011) (citations omitted) (*en banc*). Following our review of the record, we discern no abuse of discretion by the trial court. *See id.* We find the trial court opinion properly disposes of the issue and we rely upon it. *See* Trial Ct. Op. at 13-19 (noting periods of delay caused by Appellant).

Fourth, Appellant contends

---

[7] We note that a new Rule 600 was adopted, effective July 1, 2013, "to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule." Pa.R.Crim.P. 600, Cmt. However, because the criminal complaint in this case was filed on April 9, 2013, prior to the new rule, we will apply the former version of Rule 600. The amendments to Rule 600 do not affect the result in this case.

the trial court abused it's judicial discretion in refusing the admit into evidence, J.L. Hollinger Inc.'s insurance loss claim that irrefutably reimbursed the complainant in the amount of $60500. This insurance claim which exceeded the $42500 amount as charged in the Commonwealth's criminal information, would have shed light on this unexplained reason for this loss discrepancy, and further, these issues go to the weight of the evidence the trier-of-fact may have given to the insurance claim in reaching their verdict. Therefore, [A]ppellant was subjected to an erroneous denial of his constitutional rights to due process, fundamental fairness and compulsory process under the Sixth and Fourteenth Amendments to the U.S. Constitution. Accordingly, [A]ppellant's conviction must be vacated in it's [sic] entirety.

Appellant's Brief at 40.

Our review is governed by the following principles:

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015), (citations and quotation marks omitted), *cert. denied*, 137 S. Ct. 92 (2016).

Whether a document should be admitted under the business records exception to the hearsay rule is within the discretion of the trier of fact provided that his or her discretion is exercised within the dictates of Section 6108.[8] This type of evidentiary ruling may only be

---

[8] Section 6108 provides:

reversed on appeal if an error of law was committed or there was a clear abuse of discretion. A document not prepared by the person testifying is not automatically rendered inadmissible, as long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of reliability.

***Toth v. W.C.A.B. (USX Corp.)***, 737 A.2d 838, 841 (Pa. Commw. 1999).[9]

At trial, Chad Michael Hollinger[10] testified, *inter alia*, as follows regarding a document *pro se* Appellant showed him:

---

**(a) Short title of section.**—This section shall be known and may be cited as the "Uniform Business Records as Evidence Act."

**(b) General rule.**—A record of an act, condition or event shall, insofar as relevant, be competent evidence **if the custodian or other qualified witness testifies to its identity and the mode of its preparation**, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

**(c) Definition.**—As used in this section "business" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa.C.S. § 6108(a)-(c) (emphasis added).

[9] We note that "[t]his Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Maryland Cas. Co. v. Odyssey Contracting Corp.***, 894 A.2d 750, 756 n.2 (Pa. Super. 2006) (citations omitted).

[10] Mr. Hollinger testified that he was self-employed at J. L. Hollinger & Sons Equipment Sales. N.T., 4/14/15, at 65.

- 10 -

The Court: When you've had a chance to review it, please acknowledge.

The Witness: I remember this document. Yes.

The Court: You may ask a question.

[Appellant]: What is it that you remember about that document, sir?

A: I'm not a hundred-percent sure what—I'd have to look back into this but—this was in January of 2012. I know we put this in—and I'd have to look what this was for. It says, theft by deception.

Q: If—if—

A: But it says the amount of the loss was $60,000, but I wouldn't have turned in 60,000. The loss on your—the loss was 42,500. I'd need more paperwork to see what this was for.

* * *

Q: Mr. Hollinger, what—what I'd like you to do—directing your attention to that document, that's an insurance document, correct, sir?

A: Yes.

Q: And is that your insurance company?

A: Yes. Erie Insurance.

Q: Okay. And you, on the date of that—when—when did you put in that insurance claim to that insurance company, sir?

A: It says the loss date was 5/16/2011.

Q: Okay. And what date have we been talking about for the last—past 15 minutes for the loss?

A: 5/17/2011.

*  *  *

Q: If I'm not mistaken, from my brief examination of that document—**it's the first time I've seen it**—

A: Okay.

Q: —is there somewhere on there that talks about AMB Trading, LLC, contact us or contact—does it say contact us or something like that?

[The Commonwealth]: Your Honor, I'm going to object at this point. This is a hearsay document. The proper individuals who created this are not here to speak to it. This witness cannot speak to the out-of-court statement contained within it.

The Court: The hearsay objection is sustained.

*  *  *

Q: Have you seen this document before?

A: No. **I never seen this particular document**.

The Court: that ends the questioning then.

*  *  *

The Court: . . . Any further questions of this gentleman relative to any other issues, sir?

A: Not at this time, Your Honor.

*  *  *

[Appellant]: Your Honor, there's one evidentiary issue, sir. I had made an oversight. I'm asking, in the interest of justice, can we kindly approach so—if the Court feels it's

- 12 -

necessary. I didn't ask the [c]ourt to enter that document, that insurance document into evidence, Judge.

The Court: It will not be offered into evidence. It's a hearsay document. It's not going to be presented. If you have the witness and you have the writer of the document or you have someone from the insurance company to come and testify as to the document, you may certainly do that. The individual from the stand said he did not recognize the document. Therefore, it is hearsay and will not be admitted into evidence.

N.T., 4/14/15, at 93-5, 97, 102 (emphases added).

Following our review of the record, the applicable law, and the well-reasoned opinion of the trial court, we conclude this issue has no merit. We discern no abuse of discretion by the trial court in its evidentiary ruling. *See* *Woodard*, 129 A.3d at 494; *Toth*, 737 A.2d at 841. We rely upon the trial court opinion which properly addresses and disposes of the question presented. *See* Trial Ct. Op. at 19-21 (holding the witness did not have the required knowledge and was not qualified to testify concerning the document).

Lastly, Appellant contends the "trial court abused it's [sic] discretion when it denied [him] credit for time spent in custody in New Jersey pursuant to Pennsylvania's fugitive warrant." Appellant's Brief at 49. Appellant avers

[o]n July 15, 2013, [he] was arrested by detectives at his New Jersey residence pursuant to a "fugitive arrest warrant" for being wanted for theft out of Lancaster County, Pennsylvania.

\* \* \*

- 13 -

[A]ppellant must be resentenced and awarded credit for time spent in official custody in another sovereign while waiting to be extradited to the Commonwealth.

*Id.* at 52, 54.[11]

"[W]here an appellant challenges the trial court's failure to award credit for time served prior to sentencing, the claim involves the legality of sentence." ***Commonwealth v. Miller***, 655 A.2d 1000, 1001 n. 1 (Pa. Super. 1995) (citation and quotation marks omitted). "Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary." ***Commonwealth v. Hawkins***, 45 A.3d 1123, 1130 (Pa. Super. 2012) (citation omitted).

Section 9760 provides, in pertinent part:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of **the criminal charge for which a prison sentence is imposed or as a result of the**

---

[11] We note that a status conference in the instant case was held on September 30, 2014. The court stated:

Just to review a brief history, [Appellant], February 14th of 2013, pled guilty to charges in Union County. Charges here were filed on April 9th of 2013. He was also facing charges, at that point, in Mammoth [sic] County and Union County.

On February 25th of 2014, he was transported from New Jersey, I believe it was a county jail there, by the Sheriff's office to us.

N.T., 9/30/14, at 3-4.

> **conduct on which such a charge is based.** Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1) (emphasis added). It is well established that

> "a defendant shall be given credit for any days spent in custody prior to the imposition of sentence, but only if such commitment is on the offense for which sentence is imposed." **Commonwealth v. Clark**, 885 A.2d 1030, 1034 (Pa. Super. 2005) (quoting [**Miller**, 655 A.2d at 1002] (internal quotation marks omitted).

**Commonwealth v. Infante**, 63 A.3d 358, 367 (Pa. Super. 2013).

Appellant filed a petition for time credit in which he averred, in pertinent part, as follows:

> According to the Records Department at the Monmouth County Correctional Institution, [Appellant] was detained in Monmouth County Correctional Institution in New Jersey on July 5, 2013, on charges of contempt, and he was held on those charges until February 17, 2014, when he posted bail.
>
> From February 17, 2014 through February 25, 2014, when he was transferred to Lancaster County Prison, [Appellant] was detained in New Jersey solely because of the instant charges.

Pet. for Time Credit Correction to DC-300B, 4/14/16, at 1-2.

Appellant requested the court to "[o]rder the Lancaster County Clerk of Courts to correct his DC-300B[12] to reflect that he is entitled to time

---

[12] In **Commonwealth v. Heredia**, 97 A.3d 392 (Pa. Super. 2014), this Court noted that

- 15 -

credit from February 17, 2014 on his sentences of incarceration . . . and to transmit the corrected document to the SCI where he is currently incarcerated." *Id.* at 2. The trial court granted the petition. *See* Order, 4/18/16. Appellant was granted credit for time served on the instant offenses. *See Infante*, 63 A.3d 358, 367. We discern no error of law by the trial court. *See Hawkins*, 45 A.3d at 1130.

For all of the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Justice Mundy did not participate in the consideration or decision of this case.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2017

---

> Form DC–300B is a commitment document generated by the Common Pleas Criminal Court Case Management System. *See* 37 Pa.Code § 96.4; 42 Pa.C.S.A. § 9764. Section 9764 of the Judicial Code sets forth the procedure associated with transfer of an inmate into DOC custody and provides that, on commitment of an inmate, the transporting official must provide the DOC with a copy of the trial court's sentencing order and a copy of the DC–300B commitment form. *See* 42 Pa.C.S.A. § 9764(a)(8).

*Id.* at 394 n.3.